HALL, Judge.
Plaintiff who was injured in an automobile accident on August 29, 1966, brought this suit against Automobile Owners Safety Insurance Company and Standard Life and Accident Insurance Company seeking to recover certain benefits, under an “Automobile Owner’s Hospital Policy.” Plaintiff also prayed for statutory penalties and attorney’s fees. The policy sued upon was originally issued to plaintiff by Automobile Owners Safety Insurance Company but was subsequently reinsured by Standard Life and Accident Insurance Company which assumed all liability thereunder. Thereafter Automobile Owners Safety Insurance Company ceased doing business, and although plaintiff sued both companies, the real defendant is Standard Life and Accident Insurance Company.
Following trial on the merits judgment was rendered in favor of plaintiff against Standard Life and Accident Insurance Company “in the sum of $100.00 per month beginning September 28, 1966, even for life, so long as such disability and confinement continues, plus the sum of $192.00 for Hospital benefits, and $10.00 for First Aid together with legal interest thereon from date of judicial demand until paid and all costs.” There was further judgment fixing the expert witness fees of two doctors in the sum of $75.00 each and taxing same as costs. Penalties and attorney’s fees were denied.
Defendant appealed. Plaintiff also appealed praying that the judgment be amended so as to award penalties and attorney’s fees under the provisions of LSA-R.S. 22:657.
The judgment appealed from was rendered on May 8, 1968. On May 24, 1968 defendant, with full reservation of its right of appeal, tendered plaintiff the sum of $421.99 (plus an additional sum of $230.84 to cover interest and costs to the date of the tender). The tender was accepted by plaintiff with full reservation of his right to appeal to the same extent as if no such tender had been made and accepted.
The sum of $421.99 tendered by defendant and accepted by plaintiff includes the item of $192.00 of hospital benefits and the item of $10.00 for first aid awarded plaintiff in the judgment. The balance of such sum amounting to $219.99 represents payment of “Total Confinement Benefits” under Part Three of the policy for the period from August 28, 1966 (the date of plaintiff’s accident) to November 3, 1966, at the rate of $100.00 per month.
There remain two questions posed for our determination: (a) whether plaintiff is entitled to any benefits under Part Three of the policy beyond November 3, 1966, and (b) whether plaintiff is entitled to penalties and attorney’s fees.
The policy insured plaintiff:
“Against loss from accidental bodily injury sustained while driving or riding within any automobile, truck or bus for business or pleasure during the term of this policy, provided such bodily injuries are caused solely by reason of an automobile, truck or bus accident.”
Part Three of the policy reads in part as follows:
“Part Three — Total Confinement Benefits For Life — Automobile Accidents.
“If ‘such injury’ as described in the Insuring Clause * * * shall immediately after accident wholly and continuously disable and prevent the insured from performing any and every duty pertaining to any business or occupation, and as the result thereof is thereby necessarily confined within doors and requires regular visits therein by a legally licensed medical or osteopathic physician or surgeon, the Company will pay for any one accident an indemnity for one day or more at the rate of One Hundred Dollars ($100.00) per month even for *277 life, so long as such disability and confinement continues.”
The record reveals that plaintiff, then 87 years old, sustained a fractured humerus, a bruised chest and minor injuries to his knee and ankle in an automobile collision on August 28, 1966 for which he was hospitalized on the same date. Upon his discharge from the hospital on October 8, 1966 plaintiff moved into an apartment in Stanton Manor, a senior citizen hotel, which is located at 1224 St, Charles Avenue in New Orleans. There are no doctors or nurses living there and there are no nurses on the staff.
On October 20, 1966, twelve days after his discharge from the hospital, plaintiff visited the office of his treating physician, Dr. L. Terrell Tyler. On that occasion Dr. Tyler told him he should not drive an automobile or do strenuous activities with his shoulder but that he did not need any additional confinement and could come and go as he pleased.
Plaintiff was under the care of Dr. Tyler and his partner, Dr. Daniel W. Hayes, for many months and visited their office on numerous occasions. Neither doctor ever visited plaintiff at his apartment and plaintiff was never seen at his apartment by any nurse or any other doctor.
On November 3, 1966 Dr. Tyler rendered a report to the insurance company in which he stated inter alia that plaintiff was “ambulatory.”
On January 27, 1967 Dr. Hayes was of the opinion that plaintiff had sclerotic heart disease. However the proof is insufficient to show any causal connection between the accident and the heart condition.
Plaintiff testified that he was 88 years old and a retired ordained minister of the Church of the Nazarene. Prior to the accident he had performed regular pastoral services which required him to drive an automobile. Since he could no longer drive he had to retire. He testified however that since his accident he has filled the pulpit three or four times when the pastor was away and teaches a Sunday School class on Sunday mornings but does no pastoral work. Plaintiff further testified that since his discharge from the hospital on October 8, 1966 he has taken sightseeing walks, goes to his doctor’s office, goes downtown on the street car and bus, visits the library, goes to the theatre, and pursues his interest as best he can. Dr. Tyler testified that plaintiff could perform all of the duties connected with being a minister of the gospel except drive an automobile.
Defendant has paid all benefits due plaintiff under other portions of the policy and has paid plaintiff benefits under Part Three of the policy through November 3, 1966 but contends that plaintiff is not entitled to any benefits under Part Three subsequent to that date.
In our opinion the record fully substantiates defendant’s contention that since November 3, 1966 plaintiff has not been “wholly and continuously” disabled and prevented by the injuries sustained in the accident “from performing any and every duty pertaining to any business or occupation;” nor has he been “necessarily confined within doors” nor has he required “regular visits therein by a legally licensed medical or osteopathic physician or surgeon.”
The Trial Judge in his written “Reasons for Judgment” stated:
“The court is of the opinion that the plaintiff is presently ‘wholly and continuously’ disabled and is ‘confined within doors’ within the meaning of the terms of the policy. Bankson v. Mutual Benefit Health & Accident Assn., 208 La. 1008, 24 So.2d 59.”
The Bankson case is clearly distinguishable on the facts. In that case plaintiff was, except for trips to various hospitals and sanitariums, continuously confined to his home under the care of a physician because of total disability, the only exception *278 being that under the instructions of his physician he was allowed to leave the confines of his home with a nurse or attendant for the purpose of taking an automobile ride and walking exercises in order to prevent a general weakening of his muscles and breakdown of his system. While he was at home he was attended by two nurses. It was testified in that case that plaintiff was not only not permitted to leave the house alone but could not leave his room without assistance.
Part 1 of the policy under consideration in Bankson provided monthly benefits of $100.00 resulting from disease “which confines the Insured within doors and requires regular visits therein by a legally qualified physician.” The Court said:
“We think the parties intended by this Clause, and we so construe it, that the insured would be permitted to recover under Part 1 of the policy if his disability by reason of illness was such that it would ordinarily require confinement within doors, and the fact that the patient is instructed or allowed to leave the confines of his home for the purpose of getting fresh air and sunshine, as in the case of tuberculosis, or to take walks to prevent atrophy and weakness of the muscles, as in this case, does not necessarily deprive the insured of his right to recover under Part 1 of the contract.”
The facts in the instant case bear no resemblance to the facts in Bankson. Here plaintiff is not confined at home under the care of a physician because of total disability. While at home he is not attended by nurses. He walks and pursues his activities and even does part-time work of the character he formerly performed. He goes downtown or wherever he wishes without any attendance or assistance. He goes to the library and the theatre, and generally comes and goes as he chooses. Plaintiff at most is only partially disabled and such partial disability is partly due to his heart condition and not solely the result of injuries sustained in the accident of August 28, 1966.
We are of the opinion that plaintiff is not entitled to any benefits under Part Three of the policy beyond November 3, 1966.
Plaintiff has appealed praying for penalties and attorney’s fees under the provisions of LSA-R.S. 22:657 which reads in part as follows:
“All claims arising under the terms of health and accident contracts issued in this state * * * shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist. The insurer shall make payment at least every thirty days to the assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney’s fees to be determined by the court. * * *”
On September 24, 1966 plaintiff gave written notice to defendant of his accident on a form furnished by defendant. Thereafter considerable correspondence developed between the parties, in which defendant from time to time requested more information which plaintiff always furnished. One of the matters at issue between the parties was the length of time plaintiff was hospitalized as a result of the accident. This question arose from the fact that during the time plaintiff was hospitalized for treatment of his fractured arm he developed a colon condition which required an immediate operation. The operation was performed on September 19, 1966 and naturally prolonged the period of plaintiff’s stay in the hospital. Defendant *279 took the position that it was not liable for any hospital benefits beyond September 19, 1966. However under date of November 3, 1966 Dr. Tyler, plaintiff’s treating physician, rendered a report to defendant in which he stated that in his opinion plaintiff would have sufficiently recovered from the injury due to his accident to have been discharged from the hospital on September 29, 1966.
On November 22, 1966 defendant insurer wrote to plaintiff stating that it had “developed sufficient information to conclude the evaluation of your claim.” The letter further stated that its medical director, Dr. Handleman, had reviewed the medical file and had concluded “that in all probability” plaintiff’s period of hospitalization for the fractured arm should not extend beyond September 19, 1966, the date of the colon operation. In this letter defendant offered to settle plaintiff’s claim for $209.33 representing 22 days of immediate total continuous confinement and total disability, 21 days of hospitalization and $10.00 for immediate first aid treatment. This offer was conditioned upon plaintiff signing a complete release of all claims under the policy. Plaintiff refused to sign the release.
It should be noted that the record contains no evidence that Dr. Handleman had ever seen plaintiff and contains no evidence showing any factual basis for his recommendation that the period of plaintiff’s hospitalization which could be attributable solely to the accident terminated on September 19, 1966. The medical file review by Dr. Handleman contained the report of plaintiff’s treating physician that such period of hospitalization would not have expired until September 29,1966.
Defendant’s letter of November 22, 1966 amounted only to an offer of compromise. It could not be considered as a tender. See Fruge v. Hub City Iron Works, Inc., La.App., 131 So.2d 593; Sensat v. State Farm Fire & Casualty Company, La.App., 176 So.2d 804.
It is obvious that as of the date of its letter of November 22, 1966 defendant was fully apprised of plaintiff’s injury and his confinement to a hospital. The statute requires payment within 30 days of written notice and proof of claim, yet defendant made no payment or tender of payment for the hospital benefits due plaintiff until after judgment was rendered approximately two years later.
We are of the opinion that defendant’s failure to pay the hospital benefits due plaintiff within 30 days after November 22, 1966 at the latest, was unreasonable and arbitrary. We do not regard defendant’s contention with respect to the duration of plaintiff’s hospitalization as having been made in good faith.
We are of the opinion that plaintiff is entitled to a judgment for $202.00 representing first aid and hospital benefits plus $219.99 acknowledged by defendant to be due under Part Three of the policy, or a total sum of $421.99. This amount has been paid since the rendition of the judgment appealed from. We are of the further opinion that plaintiff is entitled to penalties of $421.99 (see Thomas v. Universal Life Insurance Company, La.App., 201 So.2d 529 and cases there cited) plus attorney’s fees which we fix at the sum of $500.00.
For the foregoing reasons the judgment is amended in part, reversed in part and recast so as to read as follows:
"It is Ordered, Adjudged and Decreed that there be judgment herein in favor of the plaintiff, Reverend Manno M. Snyder, and against the defendant, Standard Life and Accident Insurance Company, in the full sum of $421.99 together with legal interest thereon from date of judicial demand until paid and for all costs.
“It is further Ordered, Adjudged and Decreed that there be further judgment herein in favor of said plaintiff and against said defendant in the full sum of *280 $421.99 as statutory penalties plus the sum of $500.00 as attorney’s fees.
"It is further Ordered, Adjudged and Decreed that the expert witness fees of Drs. L. Terrell Tyler and Daniel W. Hayes be fixed in the sum of $75.00 each and taxed as costs herein.”
Each party shall bear his own costs of appeal.
Amended in part, reversed in part and recast.